NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
ERIC M. RICHARDSON,            :
                               :      Civ. No. 19-21107 (RMB)
          Petitioner           :
                               :
     v.                        :      **OPINION**
                               :
DAVID E. ORTIZ,                :
                               :
          Respondent           :
_____ :

BUMB, United States District Judge

　　Petitioner Eric M. Richardson is a prisoner who was incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey when he filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his loss of good time credits as a sanction following a prison disciplinary hearing in the United States Penitentiary Hazelton ("USP Hazelton") in Bruceton Mills, West Virginia. (Pet., ECF No. 1.) Petitioner filed a motion to amend his petition on April 29, 2020 (Mot. for Amendment, Dkt. No. 7), and a motion for summary judgment on June 9, 2020. (Mot. for S.J., Dkt. No. 8.) Respondent filed an answer to the petition on June 25, 2020 (Answer, ECF No. 5), and Petitioner filed a reply brief on July 13, 2020. (Reply, Dkt. No. 10.) The Court granted Petitioner's motion to amend but administratively terminated his

motion for summary judgment without prejudice. (Mem. and Order, Dkt. No. 12.) Respondent filed an amended answer on November 20, 2020, to respond to Petitioner's motion to amend. (Amended Answer, Dkt. No. 15.) Petitioner filed two reply briefs to the amended answer. (Reply, Dkt. No. 16; Reply, Dkt. No. 17.) The Court will decide the petition on the briefs without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court denies the petition.

I.    BACKGROUND

Petitioner is serving a 180-month sentence imposed on December 1, 2010, in the United States District Court for the District of Maryland, for conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. (Declaration of Marisa Nash[1] ("Nash Decl."), Ex. A  at 2, Dkt. No. 9-3 at 3.) If Petitioner receives all good conduct time currently available to him, his projected release date is April 16, 2022. (Id., Ex. A at 3; Dkt. No. 9-3 at 2.)

The facts surrounding the imposition of the challenged sanctions against Petitioner are as follows. On February 7, 2019, at USP Hazelton, staff member B. Ashley issued Petitioner an

---

[1] Marisa Nash is a Senior Attorney employed by the United States Department of Justice, Federal Bureau of Prisons, at the Northeast Regional Office, who has access to BOP records kept in the ordinary course of business. (Nash Decl., ¶1, Dkt. No. 9-2.)

incident report, charging him with three BOP Code violations: (1) "Code 110" for "[r]efusing to provide a urine sample; refusing to breathe into a Breathalyzer; [or] refusing to take part in other drug-abuse testing;" (2) "Code 307" for "[r]efusing to obey an order of any staff member;" and (3) "Code 312" for "[i]nsolence toward any staff member."[2] (Declaration of Kenneth Craddock[3] ("Craddock Decl."), Dkt. No. 9-4; Ex. B at 1, Dkt. No. 9-5 at 2.)

The incident report describes the incident as follows:

> On 2/7/2019 at approximately 8:32 pm, Inmate ["I/M"] Richardson, Eric refused to provide a breath test. While working as a compound officer, I[,] B. Ashley[,] was escorting Camp Inmates out of the USP when I/M Richardson began acting insolent towards staff by stating "y'all think you tough up here, y'all a bunch of punks." I/M Richardson was slurring his words and appeared to be under the influence of an unknown substance. At that time, I escorted I/M Richardson to the Lieutenant's office to perform an Alco-Sensor breathalyzer test. Once we got into the office, I ordered inmate Richardson to provide a breath test into the Alco-Sensor breathalyzer in which he refused. Inmate Richardson stated "fuck you and your breathalyzer." Inmate Richardson was then given three more direct orders to blow into the breathalyzer in which he refused by looking away. Inmate Richardson was then escorted to the Special Housing Unit without any further incident.

---

2 The BOP Prohibited Acts are described in 28 C.F.R. § 541.3 (Table 1).

3 Kenneth Craddock is a Discipline Hearing Officer (DHO) employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), at the Federal Correctional Complex in Hazelton, West Virginia ("FCC Hazelton"). (Craddock Decl., ¶1, Dkt. No. 9-4.)

(Craddock Decl., Ex. B at 1, Part I § 11.)

Petitioner was given a copy of the incident report the following day. (Craddock Decl., Ex. B at 1, Part I §§ 15-16.) Upon delivery of the report, staff advised Petitioner of his right to remain silent, and Petitioner stated, "Ain't nobody give me a Breathalyzer." (Id. at 2, §§ 23-24.) The investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing. (Id. § 27.)

The UDC convened for an initial hearing on February 14, 2019. Petitioner told the UDC, "I don't know anything about a breathalyzer, never was one offered to me. They are violating my religious belief[s] by spreading my anus hole." (Id. at 1, Part II § 17.) The UDC notified Petitioner that it would refer the incident report to a DHO for final disposition, which is required by 28 C.F.R. § 541.7(a)(4), because Code 110 is a "greatest severity offense," under 28 C.F.R. § 541.3 (Table 1). (Craddock Decl., Ex. B at 3, Part II §§ 18-19.)

The form "Notice of Discipline Hearing Before the DHO," indicated that Petitioner requested a staff representative to review video footage and that he wished to call three inmates as witnesses. (Craddock Decl., Ex. B, Dkt. No. 9-5 at 4.) Petitioner also signed the form "Inmate Rights at Discipline Hearing," acknowledging that staff had advised him of his rights including:

4

(1) the right to receive a written copy of the charges at least 24 hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative; (3) the right to call witnesses, present witness statements, and introduce evidence, "provided institutional safety would not be jeopardized"; (4) the right to present a statement or remain silent; (5) the right to appear throughout the hearing; (6) the right to receive written notice of the DHO's decision and the facts supporting the decision; and (7) the right to appeal the DHO's decision through the administrative remedy process. (Craddock Decl., Ex. B, Dkt. No. 9-5 at 4-5.)

The DHO hearing took place on March 13, 2019. (Craddock Decl., Ex. C, Dkt. No. 9-6 at 3.)  Prior to the hearing, the DHO noticed that Petitioner requested a staff representative, specifically the staff member who had chaired his UDC Committee Hearing. (Craddock Decl., ¶2, Dkt. No. 9-4.) The DHO explained that BOP policy did not permit this, and he asked Petitioner what he wanted the staff representative to do for him. (Id.) Petitioner said he wanted the staff representative to watch the video footage to see that he was not intoxicated. (Id.) Petitioner declined the DHO's offer for Petitioner to select a different staff representative to watch the video. (Id.) The DHO also offered to review the video himself but stated that he would have to postpone the hearing in order to do so. (Id.) Petitioner told the DHO that he wanted to go forward

with the hearing, and he waived the presence and testimony of a staff representative. (Craddock Decl., ¶2, Dkt. No. 9-4; Ex. C at 1 § II.A, Dkt. No. 9-6 at 2.)

The hearing continued and Petitioner confirmed that he understood his rights. (Id., Ex. C at 1 § III.B; Dkt. No. 9-6 at 2.) The DHO informed Petitioner that the inmates he had requested as witnesses could not appear at the hearing due to security concerns about bringing minimum-security camp inmates into the USP Special Housing Unit. (Craddock Decl., ¶2, Dkt. No. 9-4.) Instead, the witnesses gave written answers to specific questions provided by Petitioner. (Id. Ex. C at 1 § III.C.2; Dkt. No. 9-6 at 3.) According to the DHO, Petitioner "voiced no concerns, indicated the written statements addressed [his] desired testimony adequately, and told the DHO [he] wished to move forward with the hearing." (Id.)

Inmates provided the following written testimony. Inmate Graham said that Petitioner said "Nothing at All!" to the officer, Petitioner did not appear to be under the influence, and Graham did not hear Petitioner make an insolent remark. (Id., Ex. C, Dkt. No. 9-6 at 5.) Inmates Howard, Kaim, Dewees, and Fassett stated that Petitioner did not appear to be under the influence, and that they did not hear him make an insolent remark. (Id., Dkt. No. 9-6 at 6-7, 9-10.) Inmate Guy indicated that he did not have relevant information. (Id. at 8.) The DHO read the description of the

6

incident from the incident report, and asked Petitioner if the allegations were true. (Craddock Decl., Ex. C at 1 § III.B, Dkt. No. 9-6 at 2.) Petitioner said, "I was never ordered a breathalyzer." (Id.)

The DHO determined that Petitioner committed the prohibited act of refusing a drug or alcohol test, in violation of Code 110, but dismissed the Code 307 and Code 312 charges because their elements were contained in Code 110. (Id., Ex. C at 2-3 §§ IV-VI, Dkt. No. 9-6 at 3-4.) In reaching his conclusion, the DHO noted that he asked Petitioner whether any of the inmate witnesses were present in the lieutenant's office when the reporting officer said he ordered the Breathalyzer test, and Petitioner said, "No." (Id., § V, Dkt. No. 9-6 at 3.) The DHO stated that he believed the reporting officer was truthful and accurate in his reporting, as he is required to do in all cases of inmate misconduct, and that Petitioner offered no evidence to support his claim that he was not asked to take a Breathalyzer test. (Id. at 3-4.) Based upon all the evidence, the DHO concluded that Petitioner committed the prohibited act of refusing an alcohol test. (Id. § VI, Dkt. No. 9-6 at 4.) Thus, the DHO imposed the following sanctions: (1) loss of 40 days of good conduct time; (2) loss of visiting privileges for 180 days; and (3) 60 days in disciplinary segregation. (Id.) The DHO explained that he imposed these sanctions because "refus[ing] to provide a urine sample [sic] to staff when requested

7

creates an inability of staff to implement the established drug screening policy which provides an orderly operation where both inmates and staff can live and work in a safe environment." (Craddock Decl., Ex. C at 3 § VII, Dkt. No. 9-6 at 4.)

Petitioner attempted to exhaust the administrative remedies available to challenge the DHO's decision but was unable to complete the process due to his procedural errors. (Answer, Dkt. No. 9 at 13-14.) Respondent does not press for dismissal based on procedural default of administrative remedies. Therefore, the Court turns to the merits of the petition. Petitioner raises four grounds for relief in his petition, summarized as follows: (1) the incident report was defective because it failed to identify witnesses who were present at the time Petitioner allegedly refused a Breathalyzer test; (2) the DHO denied Petitioner his right to a staff representative to review video footage of the incident; (3) Petitioner was not provided notice of the cause of his administrative segregation; and (4) the accusations by staff in the incident report were falsified in retaliation against Petitioner, and the DHO was not impartial because he spoke to staff member R. Simms about Petitioner. (Petition, Dkt. No. 1.)

II.  PETITIONER'S MOTION FOR AMENDMENT

In his motion to amend, Petitioner alleges that on February 7, 2019, staff members Ashley and Simms conducted unauthorized strip searches on himself and eleven other inmates between 7:58

and 8:28 p.m. (Mot. for Amendment, Dkt. No. 7 at 2.) Petitioner informed Ashley that forcing him to bend over and spread his butt cheeks violated his religious beliefs. (Mot. For Amendment, Dkt. No. 7 at 3.) Ashley threatened to use force against Petitioner if he did not comply. (Id.) Petitioner then threatened to inform Captain Howard of the incident. (Id.) Petitioner and the other eleven inmates were then strip searched. (Id.) Petitioner alleges that it was only the USP inmates, not the SPC [camp] inmates, who were required to be strip searched at that time. (Id.) Petitioner further alleges that video from security cameras would refute Ashley's allegation that Petitioner had been acting abnormally. (Id.)

Next, Petitioner describes an alleged incident that took place before his DHO hearing on March 13, 2019. (Id. at 4.) He alleges that Simms worked in the Special Housing Unit where Petitioner was housed, and that she spoke to the DHO before the hearing. (Id.) Petitioner further alleges the DHO falsely claimed that Petitioner's requested witnesses could not appear at the hearing for security reasons, and the DHO withheld five witness statements prepared for the hearing. (Id.) Petitioner contends that witness names were improperly omitted from the incident report to frustrate his ability to defend himself. (Id.)

III. DISCUSSION

    A.   <u>Standard of Law</u>

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
> . . .
> > (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." Denny, 708 F.3d at 144 (quoting Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974)). Due Process claims based on sanctions that do not affect the execution of a prisoner's sentence are not cognizable under 28 U.S.C. § 2241. Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175 (3d Cir. 2007).

The Supreme Court defined the due process protections required when a prison disciplinary hearing may result in loss of good conduct time. The five due process protections include:  1) the right to appear before an impartial decision-making body; 2) twenty-four hour advance written notice of the charges; 3) an

10

opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written decision by the fact-finder, including the evidence relied on and the reason for the disciplinary action. Wolff, 418 U.S. at 546-71.

Further, the DHO's decision must be supported by "some evidence." Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Id. at 455 (quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)). Determining whether the standard has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455. Instead, courts should determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

The BOP has substantially adopted and in some instances gone beyond these due process requirements by promulgating regulations governing its disciplinary procedures. Frankenberry v. Williams, 677 F. Supp. 793, 796 (M.D. Pa.) aff'd, 860 F.2d 1074 (3d Cir. 1988); 28 C.F.R. §§ 541.1 to 541.8.  If prison staff have reason

to believe that an inmate has committed a prohibited act, staff must prepare an incident report and refer it for investigation. § 541.5(a)-(b). The incident report must "describe[e] the incident and the prohibited act(s) [the inmate] is charged with committing." § 541.5. After the inmate receives the incident report, a staff member will investigate the incident and inform the inmate of his rights. § 541.5(b).

After the investigation, the incident report is referred to a Unit Disciplinary Committee ("UDC") for an initial hearing. § 541.7. If an inmate is charged with a Greatest or High severity prohibited act, the UDC will automatically refer the incident report to the DHO for further review and advise the inmate of his rights at the DHO hearing. 28 C.F.R. § 541.7(a)(4), (g). The Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c).

If requested, the Warden must provide an inmate with a staff member to represent him at the DHO hearing. 28 C.F.R. § 541.8(d). An inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e). An inmate is entitled to make a statement and present documentary evidence. 28 C.F.R. § 541.8(f). An inmate has the right to submit names of requested witnesses and have them called to testify. 28 C.F.R. § 541.8(f). The DHO shall call those witnesses who have information directly relevant to the

12

charges and who are reasonably available. 28 C.F.R. § 541.8(f)(2)-
(3). The DHO may dismiss any charge or find a prohibited act was
committed, and impose any available sanction for the act. 28 C.F.R.
§ 541.8(a). The decision of the DHO must be based on "at least
some facts", and if there is conflicting evidence, it must be based
on the "greater weight of the evidence." 28 C.F.R. § 541.8(f).
Finally, the DHO must prepare a record of the proceedings, which
includes the DHO's decision, the evidence relied on, the sanction
imposed, and the reason for the sanction. 28 C.F.R. § 541.8(h).
The harmless error analysis applies to cases concerning prison
disciplinary proceedings. Elkin v. Fauver, 969 F.2d 48, 53 (3d
Cir. 1992) ("'If a person may be convicted and obliged to serve a
substantial prison sentence notwithstanding a constitutional error
determined to be harmless, surely the conditions of confinement of
a sentenced prisoner may be made temporarily more severe as
discipline for a prison rules infraction despite a harmless error
in adjudicating the violation.'") (quoting Powell v. Coughlin, 953
F.2d 744, 750 (2d Cir. 1991) (citation omitted)).

> B.   Ground One of the Petition

>> 1.   *The Parties' Arguments*

In his first ground for relief, Petitioner relies on BOP
Program Statement 5270.09 and 28 C.F.R. § 541.5(a) to support his
claim that the incident report was defective and deprived him of
the opportunity to present a defense by not identifying all

witnesses to the alleged misconduct. Respondent contends that the incident report provided Petitioner with ample information concerning the charges against him and the facts supporting those charges.

In reply, Petitioner asserts that the incident report omitted the following facts. On the day of the alleged incident, Petitioner and eleven other inmates from the Satellite Prison Camp-Hazelton were on a work assignment at FCC Hazelton under close supervision of six to nine FCC Hazelton staff, one of whom was Mr. Ashley. Petitioner questions how Ashley could have identified him but not others who were present. Petitioner also takes issue with Ashley's failure to identify witnesses in the Lieutenant's office who heard Petitioner refuse to take a Breathalyzer test.

    2.  *Analysis*

BOP regulation 28 C.F.R. § 541.5(a) governs incident reports and provides, in relevant part: "[a] staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing." BOP Program Statement 5270.09 provides further guidance to BOP staff, stating

> The description of the incident should contain all facts known by the employee that are not confidential. Anything unusual about the inmate's behavior should be noted. The reporting employee also lists persons (staff, inmates, others) at the scene, and physical evidence (weapons, property, etc.) the employee may have handled. The report reflects any actions taken, including use of force. The

> reporting employee signs the report, enters
> his/her title, date, and time, and forwards it
> to the Lieutenant. The description of the
> incident provides the inmate with specific
> evidence for which he/she may prepare a
> defense"[4]

The incident report here adequately described the incident
and charges against Petitioner, in compliance with 28 C.F.R. §
541.5(a). "A habeas claim under § 2241 cannot be sustained based
solely on the BOP's alleged violation of its own Program Statements
inasmuch as the Program Statements are not mandated by statute or
the Constitution…." Sepulveda v. Warden Canaan USP, 645 F. App'x
115, 118 n. 2 (3d Cir. 2016) (citing e.g., Reeb v. Thomas, 636
F.3d 1224, 1227 (9th Cir. 2011)). Petitioner presented statements
from witnesses that Petitioner was not acting intoxicated and was
not insolent toward staff. The witnesses said nothing about whether
Petitioner refused to take a breath test, the infraction of which
he was ultimately found guilty. Indeed, at the DHO hearing,
Petitioner admitted that there were no inmate witnesses in the
Lieutenant's Office when Petitioner allegedly refused a
Breathalyzer test. Petitioner was not found guilty of intoxication
or insolence, so the failure to identify other witnesses who could
testify about those issues is harmless. There were no inmate
witnesses, nor any other witness identified by Petitioner, was in

---

[4] Available at
https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000 (last visited April 14, 2021).

the Lieutenant's office and had knowledge of Petitioner's alleged refusal to take a breath test. Therefore, Petitioner was not deprived of an opportunity to present a defense.

    C.   <u>Ground Two of the Petition</u>

In his second ground for relief in the petition, Petitioner contends that the DHO denied him a staff representative who could review video footage of the incident. Petitioner alleges that he requested a female officer who worked in the Lieutenant's Office to serve as his staff representative, and that he wanted her to review security camera footage that would establish his innocence.

Respondent acknowledges that 28 C.F.R. § 541.8(d) allows inmates "a staff representative during the DHO hearing process," but the regulations do not permit the chair of a prisoner's UDC hearing to serve as staff representative. <u>Id.</u> § 541.8(d)(1) (excluding staff who were "otherwise significantly involved in the incident"). At the DHO hearing, Petitioner alternatively requested "the captain" serve as his staff representative, and the DHO advised him that due to the captain's position he was not allowed to serve as a staff representative. (Craddock Decl. ¶ 2, Dkt. No. 9-4; Supplemental Declaration of Kenneth Craddock ("Supp'l Craddock Decl.") ¶ 3, Dkt. No. 15-3.) The DHO offered Petitioner an opportunity to select another staff representative. (<u>Id.</u>) Petitioner declined to choose another staff representative or to

have the DHO watch the video footage because he did not want to delay the hearing. (Id.)

BOP regulation 28 C.F.R. § 541.8(d)(1) provides "[y]ou *may request* the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident." (emphasis added). This is not a guarantee of the staff member of a prisoner's choosing. Members of the UDC Committee fall within the provision excluding them as staff representative by their involvement in the disciplinary proceeding. The record shows Petitioner was offered the opportunity for a staff representative other than the chair of the UDC Committee or the captain whom he had requested and/or for the DHO to view the video footage but Petitioner declined both offers. Therefore, he was not deprived of due process.

D.   Ground Three of the Petition

For his third ground for relief, Petitioner submits that (1) he was placed in the SHU without explanation by R. Simms; (2) the BOP failed to provide an Administrative Detention Order, required by 28 C.F.R. §§ 541.25(a), 541.26(a); and (3) he was never visited by a Segregation Review Official.

Respondent argues that Petitioner's challenge to his placement in the SHU did not affect the fact or duration of his sentence, therefore, the Court lacks jurisdiction to consider this

argument. Alternatively, the Due Process Clause does not protect the imposition of sanctions other than loss of good conduct time.

Respondent is correct. "[D]iscipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest that gives rise to a cognizable habeas claim." Sandin v. Conner, 515 U.S. 472, 486 (1995). Due process claims based on sanctions that do not affect the execution or duration of a prisoner's sentence are not cognizable under 28 U.S.C. § 2241. Id. at 487; Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175 (3d Cir. 2007). Ground Three of the petition does not present a cognizable habeas claim.

E.   Ground Four of the Petition

For his fourth ground for relief, Petitioner alleges that he was deprived of his outside recreation time and use of the law library while in the SHU. As a result, he submits that he was unable to "file against" staff members Ashley and Simms. Petitioner alleges Ashley and Simms allegedly placed him in a holding cell in the Lieutenant's Office because he complained that his strip search violated his religious beliefs. Petitioner claims that Ashley and Simms falsely accused him of being under the influence and that he refused a Breathalyzer because he threatened to report their misconduct to a captain.

Respondent argues that Petitioner cannot challenge the conditions in the SHU in a habeas corpus petition. Insofar as Petitioner is challenging a lack of evidence supporting the DHO's decision, Respondent maintains that the evidence presented at Petitioner's discipline hearing satisfied the minimal standard of proof required to uphold the DHO's conclusions. The DHO relied upon the incident report prepared by the reporting staff member, who reported that he gave Petitioner four orders to provide a breath test and that Petitioner refused to comply, instead responding with an expletive. (Craddock Decl., Ex. B at 1, Dkt. No. 9-5 at 2; Ex. C at 2, Dkt. No. 15-5 at 3.) According to Respondent, the DHO was entitled to credit the officer's report over the testimony of Petitioner and the inmate witnesses, because those witnesses were not in the lieutenant's office where the reporting officer said he ordered the Breathalyzer.

As discussed above, Petitioner cannot challenge the conditions of segregated confinement, including limitations on outdoor recreation time and use of the law library, in a § 2241 habeas petition. Although Petitioner may have been unable to file a grievance against Ashley and Simms as he alleges, he was not deprived of the opportunity to present his defense that they falsified the incident report in retaliation for his threat to

report their alleged misconduct during his strip search.[5] Petitioner could have testified about the alleged retaliation at the hearing but only made a statement that "I was never ordered a breathalyzer." (Craddock Decl., Ex. C at § III, Dkt. No. 9-6 at 2.) Additionally, Petitioner did not ask the witnesses who were present for the strip search to provide statements concerning his alleged threat to report Ashley for violating his rights or comment on Ashley's response to the threat. Petitioner only asked his witnesses to describe whether he appeared intoxicated or insolent toward staff. Finally, although Petitioner argues that the DHO's decision is against the weight of the evidence, it is not the court's role to examine the entire record, independently assess the credibility of witnesses or weigh the evidence." Hill, 472 U.S. at 455. "The 'some evidence' standard may be satisfied solely by such an incident report." Benson v. United States, 625 F. App'x 20, 22 (3d Cir. 2015) (citing Hudson v. Johnson, 242 F.3d 534,

---

[5] Insofar as Petitioner may be asserting a claim against Ashley and Sims for violation of the Fourth Amendment by conducting an unreasonable search, such a claim is not cognizable in a habeas petition under 28 U.S.C. § 2241 because relief does not affect the execution or duration of confinement. See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) ("when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 [or Bivens in the case of a federal prisoner] is appropriate.") (alteration added).

536–37 (5th Cir. 2001); <u>McPherson v. McBride</u>, 188 F.3d 784, 786 (7th Cir. 1999)).

Petitioner has requested discovery of the video footage and other evidence that was not before the DHO at the hearing. (Reply Brief, Dkt. No. 16 at 5.) Petitioner waived the opportunity to have the DHO watch the video footage by declining to postpone the hearing so the DHO could watch the video. Petitioner also declined to choose a different staff representative who could have assisted him in obtaining additional evidence that Petitioner now requests. Therefore, the Court denies Petitioner's discovery requests, and denies Ground Four of the petition.

F.   <u>Claims Raised in the Motion for Amendment</u>

Petitioner raised the following claims in his motion for amendment.

1.   *There were no security reasons to preclude witnesses at the hearing*

Petitioner alleges that the DHO falsely claimed that Petitioner's witnesses could not appear at the hearing for security reasons. This claim fails. Even if Petitioner had reason to believe the presence of witnesses posed no security threat, the due process right to call witnesses at a prison disciplinary hearing is limited; an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous

to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 566 (1974). The Supreme Court explained that "[m]any prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. <u>Id.</u> at 566-67. Thus, it is at the discretion of prison administrators to make the determination of the institutional security needs, and the Court will not second guess such a determination. <u>See</u> <u>Florence v. Bd. of Chosen Freeholders of Cty. of Burlington</u>, 621 F.3d 296, 302 (3d Cir. 2010) <u>aff'd</u>, 566 U.S. 318 (2012) ("authorities are entitled to considerable latitude in designing and implementing prison management policies") (citing <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-08 (1989)).

### 2. *The DHO withheld five witness statements*

Petitioner asserts that the DHO withheld five witness statements prepared for the hearing. Specifically, he stated "DHO's report would sustain that although all 11 inmates provided statements supporting Richardson's claim of innocence that DHO withheld from the records 5 of the inmates statements." (Mot. for Amendment, Dkt. No. 7 at 4.) DHO Craddock responded to this allegation in his supplemental declaration as follows:

> With regard to Petitioner's claim I did not
> consider all of his desired witnesses, I deny
> that allegation. I considered six witness
> statements submitted by six inmates who
> Petitioner identified as witnesses. I did not
> exclude any witnesses that he wanted to
> present. I considered the statements of his
> witnesses and weighed their statements as part
> of my decision. I recall that I specifically
> asked Petitioner during the hearing if any of
> his witnesses were in the Lieutenant's Office
> when he was ordered to submit to the
> Breathalyzer and he stated they were not. I
> documented this exchanged [sic] in my DHO
> Report.

(Supp'l. Craddock Decl. ¶4, Dkt. No. 15-3.) Petitioner claims that

the DHO's report supports his allegation, but it does not. The

report indicates that the DHO considered the witness statements of

Inmates Graham, Howard, Kaim, Guy, Dewees and Fassett, and those

statements are attached to the DHO's report. (Supp'l Decl.

Craddock, Ex. C, § III.D, Dkt. No. 15-5 at 3-10.) Further, the

"Notice of Discipline Hearing Before the DHO" form indicates that

Petitioner requested three inmate witnesses, Graham, Dewees, and

Fassett. (Supp'l Decl. Craddock, Ex. B, Dkt. No. 15-4 at 4.) There

is nothing in the record showing Petitioner requested written

statements from eleven witnesses. Further, as previously noted,

Petitioner declined an alternative staff representative at the

hearing, and thus waived the opportunity to have a staff

representative obtain additional witness statements on his behalf.

See 28 C.F.R. § 541.8(d)(2) ("the staff representative may also

assist you by speaking with and scheduling witnesses, obtaining

written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing.") Therefore, the Court finds DHO Craddock's statement that he did not withhold five witness statements is undisputed, and Petitioner was not deprived of the written testimony of his requested witnesses. See Federal Rule of Civil Procedure 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: consider the fact undisputed for purposes of the motion;" SECT 2254 Cases Rule 1 (scope of the rules) and Rule 12 ("[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.")

      3.   *The DHO was not impartial*

Petitioner alleges the DHO was not impartial because he relied on a policy that required him to find in favor of an employee despite eleven witness statements to the contrary. (Mot. for Summ. J., Dkt. No. 8 at 2.) In his supplemental declaration in support of Respondent's Amended Answer, DHO Craddock stated:

> My decision in this matter was based on the greater weight of the evidence. Petitioner was afforded all due process protections as required by policy, I weighed the evidence involved including the statement of the reporting officer, Petitioner's witness' statements and Petitioner's statement during the hearing. I determined the greater weight of the evidence showed Petitioner refused a

24

> Breathalyzer    test    and    sanctioned    him
> accordingly.

(Supp'l Decl. Craddock ¶6, Dkt. No. 15-3.)

It appears that Petitioner's argument is based on a misreading of the DHO report. DHO Craddock wrote in the report:

> [t]he DHO informed you that he believed SOS
> Ashley was being truthful and accurate in his
> reporting as he is obligated to do so in all
> cases of inmate misconduct. You offered no
> evidence to support your claim that you
> weren't ordered to take a breathalyzer test.

(Id., Ex. C at § V; Dkt. No. 15-5 at 3-4.) The reasonable interpretation of this statement is that Ashley was obligated to make an accurate and truthful report in all cases of inmate misconduct, not that DHO Craddock was required to accept Ashley's report as accurate and truthful. If Petitioner's contention were true, there would be no reason for a hearing on any incident report because the DHO would always be required to accept it as true. In the DHO report and in his supplemental declaration, DHO Craddock stated that he weighed all of the evidence including Petitioner's statement and that of his witnesses but he believed Ashley's report. Again, none of the witnesses were present when Petitioner refused the breath test in the Lieutenant's office.

Petitioner also alleges that DHO Craddock was not impartial because he spoke with Sims, an interested party, before the DHO hearing. (Mot. for Amendment, Dkt. No. 7 at 4.) In his supplemental declaration, DHO Craddock responded:

> With regard to Plaintiff's claim that I had a
> conversation with "Officer Simms" before the
> DHO hearing, I do not recall any such
> conversation. There are hundreds of staff
> members at FCC Hazelton and I am aware that an
> Officer Sims works at FCC Hazelton, but I do
> not know Officer Sims personally.
> Nevertheless, any conversation would not have
> been part of my evidence or consideration
> during the DHO hearing.

(Supp'l Decl. Craddock ¶5, Dkt. No. 15-3.) Even assuming the DHO

spoke to Sims before the hearing, the mere fact that they spoke

does not indicate they spoke about Petitioner's case or that Sims

held any influence over the DHO. Petitioner did not request Sims

as a witness nor did he give any testimony about Sim's involvement

in the incident at the hearing. If Petitioner was concerned about

the conversation, he could have raised the issue at the hearing or

he could have sought a continuance so he could obtain more

information. The Court denies Petitioner's claim that the DHO was

not impartial.

> G.   <u>Claims Raised in Reply Brief</u>

In his initial reply brief, Petitioner asserted for the first

time that not only was he prejudiced by the loss of forty days

good conduct time, but that the BOP has repeatedly refused to

calculate his earned time credits under the First Step Act. (Dkt.

No. 10 at 9.) This issue is separate from whether Petitioner was

deprived of due process during the prison disciplinary

proceedings. A moving party cannot raise new issues for the first

time in a reply brief because a responding party must have fair notice of the claim and opportunity to respond. George v. United States, 2020 WL 2731166, at *5 (D.N.J. May 26, 2020) (collecting cases). Petitioner is not precluded from asserting his claim in a new habeas petition, after exhausting his administrative remedies.

IV.  CONCLUSION

For the reasons discussed above, the Court denies the petition for writ of habeas corpus under 28 U.S.C. § 2241. An appropriate order follows.


Date: **April 15, 2021**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**